D. Victoria Baranetsky (SBN 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (510) 809-3160
Fax: (510) 849-6141
vbaranetsky@revealnews.org

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND-SAN FRANCISCO DIVISION

|  |  |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and BERNICE YEUNG, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, <br><br> Defendant. | Case No. _____ <br><br> **COMPLAINT FOR INJUNCTIVE RELIEF** |

## INTRODUCTION

1.     This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief.  The Center for Investigative Reporting ("CIR") and Bernice Yeung (together, "Plaintiffs") seek expedited processing and release of agency records requested from Defendant the United States Department of Homeland Security ("DHS").

2.     On June 14, 2017, Plaintiffs submitted a Freedom of Information Act request (the "Request") to DHS seeking records pertaining to Customs and Border Protection ("CBP") and its procedures, policies, and other materials involving expedited removal.

//

3. To date, Defendant has failed to comply with statutory deadlines and has provided no response to Plaintiffs.

4. DHS's failure to provide any response is of particular public concern because expedited removal policies and procedures remain obscure despite their potentially injurious impact on immigrants and citizens alike at the United States border.

5. The public interest in the release of these DHS records is especially substantial as it may implicate tens and perhaps hundreds of thousands of individuals who may be seized and possibly deported through its procedures.

6. Additionally, since President Donald Trump's executive orders related to immigration, there has been increased public concern over the likely expansion of expedited removal.

7. Plaintiffs now ask the Court for an injunction requiring DHS to promptly release the withheld records.

## **PARTIES**

8. Plaintiff CIR publishes *Reveal*, an online news site at revealnews.org and produces *Reveal*, a weekly public radio show with approximately 1 million listeners a week. Founded in 1977, as the first national investigative news organization, CIR has received multiple awards for its reporting. CIR is a non-profit established under the laws of the State of California, with its primary office in Emeryville, California.

9. Bernice Yeung is a staff reporter for *Reveal* and an employee of CIR.

10. Defendant DHS is a department of the executive branch of the U.S. government and an "agency" within the meaning of 5 U.S.C. §552(f)(1). CBP is a component of DHS and is charged with keeping terrorists out of the United States. DHS has its headquarters in Washington, D.C. and offices all over the country, including in Oakland and San Francisco, California.

//
//
//
//

## JURISDICTION

11.    The Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1436, and 5 U.S.C. §§ 701–706.

## VENUE AND INTRADISTRICT ASSIGNMENT

12.    Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(e) and 1402. Plaintiff CIR has its principal place of business in this district.

13.    Assignment to the Oakland Division is proper pursuant to Local Rule 3-2(c) and (d) because a substantial portion of the events giving rise to this action occurred in Alameda County, where Plaintiffs are located.

## FACTUAL BACKGROUND

### U.S. Policies Regarding Expedited Removal

14.    In 1996, Congress created under the Illegal Immigration and Immigrant Responsibility Act of 1996, Division C of Pub. L. 104–208, 110 Stat. 3009-546 "expedited removal," a procedure that allows a low-level immigration official to expeditiously remove a noncitizen without a hearing before an immigration judge or review by the Board of Immigration Appeals. *See* 8 U.S.C. § 1225(b)(1); *see also* Am. Immigration Council, *A Primer on Expedited Removal* 1–2 (Feb. 3, 2017), https://www.americanimmigrationcouncil.org/research/primer-expedited-removal.

15.    In subsequent years, the circumstances for applying expedited removal was broadly expanded. *Id.* at 1. For instance, "[s]ince 2004, immigration officials have used expedited removal to deport individuals who arrive at our border, as well as individuals who entered without authorization if they are apprehended within two weeks of arrival and within 100 miles of the Canadian or Mexican border." *Id.*

16.    Under the Obama Administration, the use of expedited removal also increased dramatically. *See* Pew Research Ctr., *U.S. deportations of immigrants reach record high in 2013* (2014), http://www.pewresearch.org/fact-tank/2014/10/02/u-s-deportations-of-immigrants-reach-

record-high-in-2013/. This prompted immediate public interest and scrutiny of the policy. *See, e.g.*, Nora Caplan-Bricker, *Deported Without Seeing A Judge: One of the Worst Parts of the Immigration System*, NEW REPUBLIC, April 14, 2014, http://bit.ly/2yUCIkM; Dara Lind, *Obama is deporting more immigrants than any president in history: explained*, VOX.COM, April 9, 2014, http://bit.ly/2zkWZ68.

17. Since its enactment, immigration advocates and organizations have raised serious concerns with the existence and implementation of expedited removal. Concerns include the failure of expedited removal to provide asylum seekers with an opportunity to express credible fear of return to their home country, as is done under other immigration procedures. *See* U.S. Comm'n on Int'l Freedom, *Barriers to Protection: The Treatment of Asylum Seekers Under Expedited Removal* 1–2 (2016), http://www.uscirf.gov/sites/default/files/Barriers%20To%20Protection.pdf. Additionally, organizations have stated that the procedure gives too much authority to immigration officials without sufficient opportunity for checks and balances. *See id.*, *see also* Am. Civil Liberties Union, *American Exile: Rapid Deportations That Bypass the Courtroom* 18 (Dec. 2014), https://www.aclu.org/files/assets/120214-expeditedremoval_0.pdf.

18. Various court documents have indicated that expedited removal yields erroneous deportation of U.S. citizens. *See Lyttle v. United States*, 867 F. Supp. 2d 1256, 1272–73 (M.D. Ga. 2012) (finding U.S. citizen removed incorrectly under expedited removal); *see generally* Petition for Writ of Habeas Corpus and Complaint, *Maria de la Paz v. Jeh Johnson*, No 1:14-CV-00016 (S.D. Tex. Jan. 24, 2014) (alleging U.S. citizen erroneously subjected to expedited removal and resulting in joint stipulation by both parties); *see also* Ian James, *Wrongly Deported, American Citizen Sues INS for $8 Million*, L.A. TIMES, Sept. 3, 2000 (chronicling expedited removal of U.S. citizen Sharon McKnight).

19. In response, the American Civil Liberties Union ("ACLU") has long been tracking the implementation of expedited removal, and in 2014 the ACLU submitted two FOIA requests to CBP for documents detailing expedited removal procedures ("ACLU Requests"). A true and correct copy of those FOIA requests is attached as Exhibit 1.

20.     In 2015, CBP disclosed responsive documents to the ACLU, disclosing the agency's policies on expedited removal. A true and correct copy of an interim response is attached as Exhibit 2.

21.     However, since that time, the agency's procedures and policies around expedited removal have likely changed given new approaches to immigration procedures. On January 25, 2017, President Donald Trump issued Executive Order No. 13767, that instructs the Secretary of Homeland Security to apply expedited removal to the fullest extent of the law. *See* Border Security and Immigration Enforcement Improvements, 82 Fed. Reg. 8793 (2017). It states, "[p]ursuant to section 235(b)(1)(A)(iii)(I) of the INA, the Secretary shall take appropriate action to apply, in his sole and unreviewable discretion, the provisions of section 235(b)(1)(A)(i) and (ii) of the INA to the aliens designated under section 235(b)(1)(A)(iii)(II)." *Id.* at 8796.

22.     In a subsequent memorandum, DHS Secretary John Kelly issued a memorandum discussing expedited removal in which he stated that the agency would publish a notice in the Federal Register identifying who would be subject to expedited removal. John Kelly, *Implement the President's Border Security and Immigration Enforcement Improvements Policies* 7 (Feb. 20, 2017).

23.     To date, the agency has not published a notice.

24.     Given these recent statements, questions persist as to the application of expedited removal; the training that immigration officers receive about implementing that policy; what level of discretion is applied to the procedures; and whether there has been abusive application of expedited removal under both previous and current presidential administrations. *See, e.g.*, ACLU, *ICE Is Trying to Deport Families Who Fear Religious Persecution Without Due Process*, ACLU.ORG, Oct. 30, 2017, https://www.aclu.org/blog/immigrants-rights/ice-and-border-patrol-abuses/ice-trying-deport-families-who-fear-religious; Immigrant Legal Resource Center, *Fair Treatment Denied: The Trump Administration's Troubling Attempt to Expand 'Fast-Track' Deportations* (2017), https://www.ilrc.org/sites/default/files/resources/2017-06-05_ilrc_report_fair_treatment_denied_final.pdf.

25. Indeed, media reports have documented how public interest in and questioning of expedited removal procedure has intensified this past year. *See, e.g.*, Michael D. Shear and Ron Nixon, *New Trump Deportation Rules Allow Far More Expulsions*, N.Y. TIMES, Feb. 22, 2017, http://nyti.ms/2m4RAe4; Michael Sangiacomo and Alfredo Corchado, *Injured man held hostage by cartel after ICE 'dumped him' at Texas border, lawyer says*, DALLAS NEWS, Jul. 28, 2017, http://bit.ly/2z7BnsA; Elise Foley, *ICE's 'Targeting Enforcement Operation' Mostly Arrests Immigrants It Wasn't Targeting*, HUFFINGTON POST, Aug. 1, 2017, http://bit.ly/2oFR9ZR.

26. Given the recent policy changes, CIR has also produced various news stories on expedited removal, in both radio and text formats. *See, e.g.*, Bernice Yeung and Andrew Becker, *Inside Trump's immigration crackdown*, REVEAL, Oct. 28, 2017, http://bit.ly/2kd24pu; Bernice Yeung and Andrew Becker, *How Trump is expanding the government's secret deportation weapon*, REVEAL, Oct. 26, 2017, http://bit.ly/2zbhf8E; Bernice Yeung, *A judge says these kids get a green card. ICE says they get deported*, REVEAL, July 6, 2017, http://bit.ly/2zbhf8E.

### The FOIA Request

27. By letter dated June 14, 2017, CIR submitted through its reporter Bernice Yeung, a FOIA request to CBP (hereinafter "the Request") seeking records pertaining to CBP's procedures, policies, and other materials involving expedited removal, among other matters. A copy of the Request is attached hereto as Exhibit 3.

28. On July 19, 2017, Ms. Yeung narrowed the Request for the agency's ease. A true and correct copy of the Request is attached as Exhibit 4.

29. The Request closely tracked the ACLU Requests from 2014. *Compare* Exhibit 1 *with* Exhibits 3 & 4.

30. Plaintiffs' Request seeks legal memoranda, procedures, policies, directives, guidance, training materials or guidelines (from 1/1/2012 to the present) for:

    a. CBP staff on issuing expedited removal orders;

    b. CBP supervisory staff on reviewing expedited removal orders;

c. CBP staff on identifying individuals with facially-valid visas who may receive an expedited removal order because they intend to immigrate;

d. CBP staff on identifying asylum seekers, including (a) fear of harm or violence and (b) the credible fear standard;

e. CBP staff on identifying individuals who have not been physically continuously present in the United States for at least two weeks;

f. CBP staff on evidence individuals are permitted to introduce to demonstrate they should not be subject to expedited removal;

g. CBP staff on identifying lawful permanent residents, U.S. citizens, or individuals admitted as refugees or previously granted asylum;

h. CBP staff on handling cases where an individual is believed to have made a fraudulent claim for asylum;

i. CBP staff on handling cases where an individual is believed to have made a fraudulent claim of U.S. citizenship, lawful permanent resident status, refugee status or asylee status;

j. CBP staff on when to rescind an expedited removal order;

k. CBP staff on when to allow a withdrawal of a request for admission;

l. CBP staff on the use of prosecutorial discretion in expedited removal;

m. CBP staff on how to handle cases where an individual makes a claim to U.S. citizenship; and

n. CBP staff on how to handle requests from individuals to contact an attorney, consulate, or other representative.

31. Plaintiffs seek a waiver of search, review, and reproduction fees on the grounds that disclosure of the requested records is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *Id.* § 552(a)(4)(A)(iii).

//

//

32.     Plaintiffs seek a waiver of search and review fees on the grounds that the Reveal qualifies as a "representative of the news media" and that the records are not sought for commercial use. *Id.* § 552(a)(4)(A)(ii).

33.     On June 16, 2017, DHS sent a letter to the requester acknowledging and transferring the request to CBP. A true and correct copy of that response is attached as Exhibit 5.

34.     By letter dated July 11, 2017, CBP sent a letter acknowledging the Request. A true and correct copy of that response is attached as Exhibit 6.

35.     On September 26, 2017, Ms. Yeung called CBP to inquire about the Request and a timeframe for processing. She was told that the responsive documents were being processed.

36.     On November 20, 2017, CIR General Counsel, D. Victoria Baranetsky sent a letter to the CBP FOIA Office and CBP FOIA Appeals, Policy and Litigation Branch, notifying both offices that Ms. Yeung has received no determination from CBP. A true and correct copy of the letter (without attachments) is attached as Exhibit 7. The letter also requested an immediate response and processing of the Request.

37.     To date, CBP has made no final determination on the Request. A true and correct copy of the FOIAonline.gov portal statement is attached as Exhibit 8.

38.     DHS has failed to comply with FOIA's requirement that an agency will respond to the Request within the 20 business days.

39.     Having exhausted all administrative remedies, Plaintiffs now seek injunctive relief.

## CAUSE OF ACTION

### Violation of Freedom of Information Act

40.     Plaintiffs repeat and reallege paragraphs 1–39.

41.     DHS is subject to FOIA and must therefore release in response to a FOIA request any disclosable records in its possession at the time of the request and provide a lawful reason for withholding any materials as to which it is claiming an exemption.

42.     DHS has no lawful basis for declining to release the records requested by Plaintiffs under FOIA.

43.     DHS has failed to act on Plaintiffs' Request within the 20 business days required by FOIA. *See* 5 U.S.C. § 552(a)(6)(A)(i). Accordingly, Plaintiffs are deemed to have exhausted their administrative remedies under FOIA.

44.     Plaintiffs are entitled to an order compelling DHS to produce records responsive to the Request.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs pray that this Court:

1.      Declare that Defendant DHS violated FOIA by failing to comply with the 20 business days required by FOIA and notifying Plaintiffs of any determination;

2.      Declare that DHS violated FOIA by failing to determine whether to provide expedited processing within 10 days and thereafter notifying Plaintiffs of such determination;

3.      Declare that the documents sought by their FOIA request, as described in the foregoing paragraphs, are public under 5 U.S.C. § 552 and must be disclosed;

4.      Order Defendant DHS to provide the requested documents to Plaintiffs within 20 business days of the Court's order, or in the alternative, provide for expedited proceedings to adjudicate Plaintiffs' rights under FOIA;

5.      Award Plaintiffs the costs of this proceeding, including reasonable attorneys' fees, as expressly permitted by FOIA; and

6.      Grant Plaintiffs such other and further relief as this Court may deem just and proper.

DATED:  December 19, 2017

Respectfully submitted,

By: /s/
D. Victoria Baranetsky (SBN 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (510) 809-3160
vbaranetsky@revealnews.org

Attorney for Plaintiffs